UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20413-CIV-GRAHAM/GOODMAN

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

vs.

WALL STREET CAPITAL FUNDING LLC,
PHILIP CARDWELL, ROY CAMPBELL, and
AARON HUME,

    Defendants.
_____/

## PLAINTIFF'S AMENDED[1] MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' OBJECTIONS TO DISCOVERY

Pursuant to the Court's instructions at the May 20, 2011 discovery hearing and in the Amended Preliminary Order on Discovery Hearing dated May 24, 2011 [DE 22] ("Order"), Plaintiff Securities and Exchange Commission ("Commission") submits this memorandum in opposition to Defendants' objections to discovery.

**I.    The Discovery At Issue Is Relevant**

The scope of discovery is governed by Federal Rule of Procedure 26(b). It is familiar law that the relevance standard under Rule 26(b) is extremely liberal, and that "'[t]he party resisting discovery has a **heavy burden** of showing why discovery should be denied.'" *Principe v. Seacoast Banking Corp. of Fla.*, 2010 WL 2976766, at *2 (S.D. Fla. July 20, 2010) (emphasis added). Defendants here must "show that the requested discovery has ***no possible bearing*** on the claims and defenses in this case," meaning that "the requested discovery (1) does not come within the broad scope of relevance as defined under Rule 26 or (2) is of such marginal relevance that the potential harm occasioned by discovery would far outweigh the ordinary presumption in

---

[1] This brief is identical to its predecessor, save that all footnotes are now in 12-point font.

favor of broad disclosure." *Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007) (emphasis added); *see also Williams v. City of Dothan*, 745 F.2d 1406, 1415-16 (11th Cir. 2004) (vacating district court's protective order where "Defendants ha[d] failed to show that production would be a significant burden to them or that the plaintiffs' requests constitute an abuse of the judicial process"). Defendants have not come close to meeting their burden.

### A. A Party Alleging a Pattern of Wrongdoing or Scheme To Defraud Is Entitled to Discovery on That Pattern or Scheme and Is Not Limited to Examples Specified in the Complaint

As the Order indicates, the Complaint explicitly alleges that Defendants were and are engaged in a long-running, ongoing pattern, practice, and common scheme that violates the federal securities laws, and that the four penny stocks specified in the Complaint are no more than illustrative examples of that scheme. Order at 1-2; *see also* Compl. ¶¶ 2, 4, 5, 23, 33. Discovery concerning additional penny stocks that formed part of that pattern or scheme is directly relevant to the plain terms of the allegations in the Complaint.

Defendants argue that Rule 9(b) would be undermined if the Commission could take discovery concerning stocks not specified in the Complaint. This argument is unfounded. Defendants did not timely assert any Rule 9(b) pleading deficiency, and Rule 9(b) does not control the scope of discovery. *See, e.g.*, *Fein v. Numex Corp.*, 92 F.R.D. 94, 97 (S.D.N.Y. 1981) ("Rule 9(b) tests only the sufficiency of pleadings and not the perimeters of discovery."); *Rorer Int'l Cosmetics, Ltd. v. Halpern*, 85 F.R.D. 43, 45 (E.D. Pa. 1979) ("[A] plaintiff must show some specific basis for his charges of fraud before he will be allowed to prosecute an action based thereon. The policies underlying this requirement are no longer apposite once plaintiff has complied, however. Once a plaintiff has shown that his charges are not frivolous or totally unsubstantiated," the discovery rules apply as in any other case (citations omitted)).

To rule for Defendants here would mean that whenever a plaintiff alleges a common pattern, practice, or scheme, the complaint must specify every single instance of that pattern, practice, or scheme – no matter how unwieldy the resulting pleading. That is not the law.[2] The "twin purposes" of Rule 9(b) are simply to ensure notice of the nature of the plaintiff's claims while safeguarding reputations against baseless allegations of fraud. *Wagner v. First Horizon Pharm. Corp.*, 464 F.3d 1273, 1277 (11th Cir. 2006). The Commission has satisfied its obligations under Rule 9(b) in this case. Indeed, it is inconceivable that Rule 9(b) would require the Commission to describe with particularity each of the dozens of stocks fraudulently promoted by Defendants in the past few years.

Courts faced with similar facts have held just what would be expected from a straightforward application of the uncontroversial principles reviewed above: absent some showing of undue burden (or other harm),[3] a party seeking to prove a pattern or practice or

---

[2] *See, e.g.*, *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002) (recognizing that plaintiffs "alleging prolonged multi-act schemes" may satisfy Rule 9(b) with "some examples" of the fraud); *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1302-03 (11th Cir. 2010) (same); *United States ex rel. Hill v. Morehouse Med. Assocs.*, 2003 WL 22019936, at *3 n.6 (11th Cir. 2003) (same); *Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295, 1306 (S.D. Fla. 2000) ("[I]f the alleged fraud occurred over an extended period of time and the acts were numerous, the specificity requirements [of Rule 9(b)] are less stringently applied."); *Anthony Distribs., Inc. v. Miller Brewing Co.*, 904 F. Supp. 1363, 1366 (M.D. Fla. 1995) (same).

[3] Defendants did not claim, much less demonstrate, that the discovery to which they object would be at all burdensome, let alone unduly burdensome. That is not surprising: each of the requests to which Defendants object was carefully tailored with respect to time frame and subject matter. Setting aside the requests concerning advice of counsel, the objected-to discovery concerns just a few years of history and is limited to: evidence that Defendants have independently investigated any of the recent penny stocks they promote (see Plaintiff's First Set of Requests for Documents ("Request") Nos. 6, 7); evidence of Defendants recently learning of independent concerns about the penny stocks they have promoted (Request No. 8); evidence of Defendants recently promoting penny stocks in non-traditional media like text messages, social networks, and internet chat rooms (Request Nos. 9, 11, 13, 15); and recent bills from providers of communications services (Request No. 16) in order to ensure that Defendants (who did not object to Request No. 1 and agree that such matters are fair game) have made a full disclosure of

3

common scheme who has included certain examples in the complaint is allowed to take discovery on the full pattern or scheme and is not limited to the examples in the complaint.

In *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372, 374-76 (W.D.N.Y. 2006), for example, the plaintiffs asserted civil RICO claims and alleged that defendants, as part of their pattern of racketeering activity, committed a series of money laundering violations that included specified transactions in specified business bank accounts. Just as in this case, the complaint listed these transactions for illustration only, explicitly indicating that these transactions were not exhaustive of the money laundering violations. *Id*. at 375-76; Amended Complaint (DE 123) at 106-16, 120-21, 126-28, *Eastman Kodak Co. v. Camarata*, No. 05-cv-06384 (W.D.N.Y. Jan. 4, 2006) (available via ECF). When the *Kodak* plaintiffs sought discovery concerning additional money laundering violations involving transactions in additional (personal) accounts at additional banks, the court readily rejected a relevance objection:

> Any analysis of the relevance (or irrelevance) of the requested material must begin with an understanding of the claims asserted. Here, plaintiffs have asserted broad civil RICO claims . . . predicated, among other violations, upon alleged money laundering violations. . . . The alleged money laundering consisted of repeated deposits into various financial institutions . . . .
>
> Nowhere in the Complaint do plaintiffs allege that the purported money laundering was restricted to transactions through and between defendants' business, rather than their personal accounts. . . .
>
> While I agree that any further transactions [involving personal accounts] *may be unnecessary to establish money laundering, I cannot agree that they are irrelevant. . . . [S]ubsequent transactions with those funds . . . may constitute further money laundering violations*.

238 F.R.D. at 375-76 (emphasis added). This case is the same: having shown certain examples of a pattern of violations, the Commission is entitled to go beyond those examples in discovery.

---

the services they use. The objection before the court exclusively concerns relevance (*see* DE 19 Ex. 1 (Defendants' objection)), not burden, and it must be evaluated accordingly.

4

To similar effect is *Wallace v. Abramson*, 1988 WL 63065 (D.D.C. June 7, 1988). There a civil RICO plaintiff, who alleged "a series of fraudulent transactions, pertaining to distinct yet related schemes," *id.* at *2, sought documentation concerning a bank loan. The documents were not pertinent to any particularized allegation remaining in the case, but the court allowed the discovery because it could help establish a pattern of fraudulent activity: "the $1 million bank loan . . . may represent another of the series of acts which plaintiff charges as part of a continuing pattern of racketeering activity." *Id.* at *4.

Also on point is *United States ex rel. Roberts v. QHG of Indiana, Inc.*, 1998 WL 1756728 (N.D. Ind. Oct. 8, 1998), in which the complaint alleged a fraudulent scheme whereby a doctor intentionally mistreated patients and claimed reimbursement for the resulting services. *Id.* at *1. The defendants objected on relevance grounds to a broad request for historical billing and medical records that extended beyond the specific allegations in the complaint. The court overruled the objection, observing that "the history of Dr. Chen's billing practices . . . might demonstrate a pattern of fraudulent billing." *Id.* at *9.

Another example is *Rorer International Cosmetics, Ltd. v. Halpern*, 85 F.R.D. 43 (E.D. Pa. 1979). There the plaintiff sufficiently alleged a fraud scheme in connection with the sale of stock, and then sought discovery concerning possible kickbacks. *Id.* at 44. The district court rejected the defendants' argument that because kickbacks were not alleged to be part of the fraudulent scheme (in a complaint subject to Rule 9(b)), they were not relevant and not a proper subject of discovery. As the Court observed, "a fraud suit is [not] subject to different discovery rules than other federal suits merely because Fed. R. Civ. P. 9(b) imposes more stringent pleading requirements." *Id.* at 45. And applying Rule 26(b), the court observed that the potential relevance of kickbacks to the alleged scheme "is too obvious to require further comment." *Id.*

As a final illustration, *Principe v. Seacoast Banking Corp. of Florida*, 2010 WL 2976766 (S.D. Fla. July 20, 2010) is instructive. The plaintiff there asserted a FMLA claim and sought evidence of the employer's pattern or practice with respect to treatment of *other employees*. The Complaint contained little or no detail about that pattern or practice (except as it applied to the plaintiff herself), and Seacoast objected that its treatment of unnamed, unidentified employees was not relevant to the plaintiff's claim. Order on Plaintiff's First Motion To Compel Discovery (DE 24) at 3-4, *Principe v. Seacoast Banking Corp. of Fla.*, No. 09-14428-CIV (S.D. Fla. Apr. 29, 2010) ("*Principe* Discovery Order"). The Magistrate Judge agreed with Seacoast, but the District Judge disagreed: "FMLA leave taken by other employees and the conditions of employment upon their return is relevant to establishing Seacoast's pattern or practice of dealing with employees who exercise, or attempt to exercise, their FMLA rights." 2010 WL 2976766, at *3.[4] The same principles apply here. Even if the triable issues in this case were ultimately limited to the four penny stocks mentioned in the Complaint (though there is no reason to impose that limitation now), Defendants' customary practices – revealed through discovery concerning other penny stocks – may be relevant to their state of mind with respect to the promotion of the four specified stocks.[5]

---

[4] The Magistrate Judge was seeking to balance the relevance of the discovery against privacy interests that may have been implicated by the production of sensitive personnel information. *Principe* Discovery Order at 3 ("While the Plaintiff may argue that additional evidence concerning non-party employees who may or may not have been granted FMLA leave could assist her, in this Court's view *such evidence is not essential to the Plaintiff's claims*. Therefore, the balancing test weighs in favor of the privacy interests of the non-party employees." (emphasis added)). Here there is no countervailing claim of privacy (or any other harm), which means that the District Judge's ruling on relevance in *Principe* applies even more forcefully here.

[5] The Commission made this point during the meet-and-confer process. *See* DE 19 Ex. 3 at 2 ("[D]efendants' activities in relation to other companies may well furnish evidence of their recklessness or other state of mind in relation to the four specified companies."). Defendants have never responded to it other than to cite Rule 9(b).

Each of the decisions discussed above approved just what the Commission is seeking here: discovery into a pattern or scheme extending beyond the specific illustrations in the Complaint. The carefully tailored discovery at issue falls comfortably within the broad scope of Rule 26(b), and Defendants have come forward with no reason for withholding it.

### B.   Discovery on Other Activities Is Relevant to the Remedies in this Action

Even if the Complaint were read (although it should not be) to be limited to the four specified penny stocks, the discovery at issue still would be relevant to the remedies in this action. The Commission has expressly alleged that the pattern or scheme is ongoing and will continue unless an injunction issues. *E.g.*, Compl. ¶¶ 10, 18, 79, 83.

To obtain an injunction, the Commission, like any plaintiff, must show a "reasonable likelihood" of future violations of the securities laws. *E.g.*, *SEC v. Calvo*, 378 F.3d 1211, 1216 (11th Cir. 2004); *SEC v. Ginsburg*, 362 F.3d 1292, 1304 (11th Cir. 2004); *see also City of Los Angeles v. Lyons*, 461 U.S. 95, 109, 111 (1983) (injunctions require proof of threat of future harm); *Wooden v. Bd. of Regents*, 247 F.3d 1262, 1283-84 (11th Cir. 2001) (same); *Meltzer v. Bd. of Pub. Instruction*, 548 F.2d 559, 568 (5th Cir. 1977) (same). Such likelihood is commonly shown with evidence of a recurring and ongoing pattern of violations. *See, e.g.*, *SEC v. Carriba Air, Inc.*, 681 F.2d 1318, 1322 (11th Cir. 1982) (upholding injunction because SEC "demonstrated *a pattern of past and present questionable business practices*" (emphasis added)).

For these reasons, in an action alleging ongoing or threatened harm, events that post-date the filing of the complaint are a legitimate subject of discovery. *See Farmer v. Brennan*, 511 U.S. 825, 845-46 (1994); *Baur v. Veneman*, 352 F.3d 625, 637 n.11 (2d Cir. 2003) ("post-filing events may confirm that a plaintiff's fear of future harm is reasonable"). Defendants claim that the Commission had an opportunity to investigate before filing this action, but the Commission

could not logically have investigated events that post-date the complaint. Nor can Rule 9(b) possibly be used to limit discovery in these circumstances. *E.g.*, *SEC v. Physicians Guardian Unit Inv. Trust*, 72 F. Supp. 2d 1342, 1352 (M.D. Fla. 1999) ("Logically, where [particularized] information is not available before commencement, [Rule 9(b)] should be relaxed.").

In sum: to sustain Defendants' objections here would be to prevent the Commission from pursuing a valid avenue of inquiry that bears directly on the relief sought in this action.

## II.  Plaintiff Is Entitled To Explore All Communications with Defendants' Counsel That Are Relevant to the Advice of Counsel Defense in This Action

Defendants have raised the defense of reliance on advice of counsel. In so doing, they have waived the privilege for any communications that bear on their good-faith reliance on the advice of their securities-law attorney Joseph Emas. *See Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1418-19 (11th Cir. 1994) (citing *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991)); *Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 564 (S.D. Fla. 2001). Defendants believe their waiver can be limited to advice used in connection with only four penny stocks. They are mistaken.

It is beyond controversy that a defendant asserting the defense of reliance on advice of counsel is not entitled to hand-pick which attorney communications to produce but rather must waive the privilege for all communications relevant to the determination of good-faith reliance. *E.g.*, *Glenmede Trust Co. v. Thompson*, 56 F.3d 476, 486-87 (3d Cir. 1995) (party raising defense of reliance on counsel may not "define selectively the subject matter of the advice of counsel on which it relied in order to limit the scope of the waiver of the attorney-client privilege and therefore the scope of discovery"); *Bilzerian*, 926 F.2d at 1292 ("A defendant may not use the privilege to prejudice his opponent's case or to disclose some selected communications for self-serving purposes."); *Inmuno Vital*, 203 F.R.D. at 564 ("[W]hen the advice of counsel

8

defense is raised, the party raising the defense must permit discovery of any and all legal advice rendered on the disputed issue."). Under these principles, the Commission is entitled to discover (among other things) all communications concerning Emas' advice on stock promotions.

*United States v. Locasio*, 357 F. Supp. 2d 536 (E.D.N.Y. 2004) is precisely on point. In that case a defendant charged with disseminating fraudulent internet advertisements sought to argue that he lacked fraudulent intent because counsel had reviewed the advertisements for compliance with Federal Trade Commission (FTC) regulations. *Id*. at 548. The question was whether the assertion of that defense would waive the defendant's privilege not only as to communications with counsel regarding the advertisements at issue in the case, but also as to earlier communications with counsel regarding previous advertisements in different media as to which the same FTC standards applied. *Id*. at 549-50. The Court held that it would. Applying *Bilzerian*, the court agreed with the government that "the jury must be apprised of all information and advice that [the defendant] received regarding what constitutes adequate disclosure, including" the earlier advice. *Id*. at 551-53. The same reasoning applies perfectly here:

> [I]f [the defendant] received information . . . regarding the application of the FTC standards to advertisements, even if in a different medium, this information would relate to his knowledge of what constitutes adequate disclosure and the likelihood that the disclosures in his internet . . . advertisements met the FTC standard. . . . Limiting the waiver to include only the advice received [on the internet advertisements] would undermine the principles underlying the waiver of the privilege when there is a reliance of counsel defense, namely that selective disclosure is not permitted.

*Id*. at 552-53. The court also noted that the defendant's years of experience dealing with FTC standards "would appear to be relevant to determining his good faith reliance." *Id*. at 552 n.7.

Here, too, Defendants claim to have received advice over many years on appropriate disclosure under the securities laws for their promotional campaigns. It would be unfair to limit the waiver (and discovery) to advice regarding one or another penny stock when all advice on

9

this topic – whether relating specifically to the four stocks listed in the complaint, any other specific stock, or to stock promotion in general – is plainly relevant to Defendants' knowledge and good faith.[6]

## CONCLUSION

Defendants' objections to Plaintiff's Request for Documents and to the subpoena *duces tecum* issued to Joseph Emas should be overruled.

Dated: June 1, 2011

Respectfully submitted,

U.S. Securities and Exchange Commission
3 World Financial Center Suite 400
New York, New York 10281
Telephone: (212) 336-0080
Facsimile: (212) 336-1324
brodyt@sec.gov

By:      s/ Todd D. Brody
        Todd D. Brody (Fl. Bar No.: A5501586)
        Daniel R. Walfish (Fl. Bar No.: A5501585)

---

[6] While the Commission's requests concerning communications with Emas may on their face appear relatively broad, the Commission was aware when it drafted the requests that the volume of documents involving Emas was likely to be tiny. (In response to the Commission's administrative demands for documents concerning the four specified stocks, Defendants logged just one document (an email) involving Emas.) If the Court is truly concerned about overbreadth, the Commission is prepared to reformulate the requests to specify the various categories to which the Commission is entitled (for example, documents relating to communications with Joseph Emas concerning the promotion of any specific penny stock, or otherwise concerning the promotion of stocks or a stock; documents concerning Emas' reputation and qualifications; engagement letters and bills; and so on). The Commission respectfully submits, however, that that is not necessary because the volume of any truly irrelevant documents is likely to be *de minimis*. Defendants indicated during the meet-and-confer process that their objection to the scope of the Emas-related requests was driven by their desire to prevent discovery concerning penny stocks beyond the four mentioned in the Complaint – not by a concern that the request was overbroad in any other way.

**CERTIFICATE OF SERVICE**

I hereby certify that on June 1, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record identified on the below Service List via transmission of Notice of Electronic Filing generated by CM/ECF.

By:  s/ Todd D. Brody

**SERVICE LIST**

Todd D. Brody, Esq.
Daniel R. Walfish, Esq.
Securities and Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281
Telephone:  212-336-0080
Facsimile:  212-336-1324

*Counsel for Plaintiff*

Jay Kim, P.A.
Florida Bar No.: 137863
Ward Kim Vaughan & Lerner LLP
One Financial Plaza, Suite 2001
Fort Lauderdale, Florida 33394
(954) 527-1115  Telephone
(954) 527-1116  Facsimile
jkim@wardkim.com

and

Lynne Wiggins, Esq.
Alabama Bar No. ASB 8808-I61A
2112 3rd Avenue South
Birmingham, Alabama 35210
Phone: 205-718-3016
Fax: 205-263-6420
lynnewiggins@yahoo.com

*Counsel for Defendants*