UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 11-20413-CIV-GRAHAM/GOODMAN

SECURITIES AND EXCHANGE COMMISSION,

Plaintiff,

vs.

WALL STREET CAPITAL FUNDING, LLC,
PHILIP CARDWELL, ROY CAMPBELL, and
AARON HUME,

Defendants.

_____/

**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF OBJECTIONS TO
PLAINTIFF'S REQUEST FOR PRODUCTION AND SUBPOENA**

Pursuant to this Court's Amended Preliminary Order on Discovery Hearing Memorializing Issues for Briefing [D.E. 22], the Defendants, Wall Street Capital Funding, LLC ("WSCF"), Philip Cardwell ("Cardwell"), Roy Campbell ("Campbell"), and Aaron Hume ("Hume"), hereby submit this Memorandum of Law in Support of their objections to the Plaintiff Securities and Exchange Commission's request for production of documents and subpoena to Joseph Emas, Esq.

**BACKGROUND**

1.      The claims in the Plaintiff's complaint [D.E. 1] are based upon the Plaintiff's allegations relating to the Defendants' promotion of four specific companies, PrimeGen, Supatcha, Caliber, and Fidelis (collectively, the "Named Companies").[1]

---

[1]  As this Court is aware, for more than a year before the filing of the complaint, the Plaintiff investigated the promotions of the stock of various publicly traded companies, including the Named Companies.

2.	The complaint has various allegations regarding the Named Companies, but fails, despite the Plaintiff's attempts to hedge its allegations by using language such as "numerous penny-stock scams" and "numerous other penny stocks," to make any specific allegations about the Defendants' promotion of any other company.

3.	There are no allegations to support any claims relating to the Defendants' promotion of any company other than the Named Companies.  Even where the complaint attempts to characterize as "a classic 'pump and dump' scheme" the activities of insiders who purportedly sold their stock of the promoted companies for a profit, the Plaintiff can only do so "on information and belief" without any specifics whatsoever.  Complaint ¶ 6.

4.	In addition to discovery relating to the Named Companies[2], the Plaintiff's First Set of Requests for Documents ("Plaintiff's Request") seeks irrelevant discovery relating to the Defendants' promotions of any other company.  In addition, Plaintiff's Request number 3 seeks "All documents concerning Joseph Emas, including without limitation all documents concerning any communications with Joseph Emas," without any concern over the subject matter of the communications between this lawyer and his clients, or whether such communications with this lawyer are within the scope of the Defendants' advice of counsel defense.[3]

5.	Further, the Plaintiff served a notice of subpoena duces tecum to be served upon Joseph Emas ("Emas Subpoena"), which demands the production of all documents concerning any of the Defendants or Stock Market Alerts, LLC, a non-party.  The Emas Subpoena

---

[2]  As to the discovery relating to the Named Companies and other undisputed categories, the Defendants have timely responded to the Plaintiff's Request and have produced responsive documents.

[3]  In their Answer and Defenses [D.E. 5], the Defendants asserted the defense, among others, of their reliance on the advice of their legal counsel, namely, that of Joseph Emas, Esq., regarding certain disclosures and contractual language that the Defendants used in conjunction with the Named Companies.  Defense ¶18.

impermissibly seeks discovery of each and every document relating to each of the Defendants and a non-party, without restriction.  Indeed, the Emas Subpoena attempts discovery of attorney-client privileged documents without regard to whether those documents are relevant to the applicable defense asserted by the Defendants.

**MEMORANDUM OF LAW**

The Plaintiff benefited from more than a year's worth of pre-litigation discovery. Equipped with all of the documents and information from the Defendants and, presumably, by others, as well as the vast resources at its fingertips, the Plaintiff had the best opportunity to identify any and all other companies that it would ultimately allege as being part of a larger common fraudulent scheme.  Yet, other than vague generalizations, the complaint contains not even a single allegation about the promotion of any other company outside of the Named Companies.  To the extent that the complaint attempts to state a cause of action based on the alleged fraudulent promotions of unidentified companies, it fails to meet the pleading requirements of Rule 9(b) of the Federal Rules of Civil Procedure.

Rule 9(b)'s Restrictions on Discovery

As this Court is aware, the courts of the Southern District of Florida and the Eleventh Circuit have found that Rule 9(b) deters the filing of suits solely for discovery purposes.  *See West Coast Roofing & Waterproofing, Inc., et al. v. Johns Manville, Inc., et al.*, No. 07-13421, 2008 U.S. App. LEXIS 22066, at *86 (11th Cir. July 24, 2008) (noting that Rule 9(b) serves to "eliminate fraud actions in which all the facts are learned through discovery after the complaint is filed") (citing *Friedlander v. Nims*, 755 F.2d 810, 813 n.3 (11th Cir. 1985)); *United States ex el., Atkins v. McInteer, et al.*, 470 F.3d 1350 (11th Cir 2006) ("When a plaintiff does not specifically plead the minimum elements of [his] allegation, it enables [him] to learn the

complaint's bare essentials through discovery[4] and may needlessly harm a defendant's goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and at worst, . . . baseless allegations used to extract settlements.") (citing *United States ex rel. Clausen v. Lab. Corp. of Am.*, 290 F.3d 1301, 1314 n.24 (11th Cir. 2002)[5]; *Box Office Entertainment, LLC v. Brian D. Gordon, CPA, P.A*, No. 05-21010-Civ-Martinez-Bandstra, 2007 U.S. Dist. LEXIS 33984, at *28 (S.D. Fla. May 9, 2007) (noting purpose of Rule 9(b) and finding that "allowing further discovery relating to fraud would amount to giving Plaintiff free licence to engage in a fishing expedition and would undermine a critical function of Rule 9(b)"); *United States ex rel. Feingold v. Palmetto Gov't Benefits Adm'rs*, 477 F. Supp. 2d 1187, 1196 (S.D. Fla. January 30, 2007) ("The particularity requirement of *Rule 9* is a nullity if Plaintiff gets a ticket to the discovery process without identifying a single claim. . . .  If given such a ticket, the next stage of [the] litigation is clear. The Plaintiff will request production of every . . . [document to support the claims].  At that point, the Defendant may decide to settle the case to avoid the enormous cost of such discovery and the possible disruption of its ongoing business. . . .") (citing *United States ex rel. Clausen v. Lab. Corp. of Am.*, 198 F.R.D. 560, 564 (N.D. Ga. 2000), aff'd, 290 F.3d 1301 (11th Cir. 2002)).

---

[4]  In its bench memorandum submitted at the hearing, the Plaintiff cites to *SEC v. Calvo,* 378 F.3d 1211 (11th Cir. 2004), *L.A. v. Lyons*, 461 U.S. 95 (1983) and *Meltzer v. Board of Public Instruction*, 548 F.2d 559 (5th Cir. 1977) to demonstrate the need for discovery to support its claim for injunction.  None of these cases, however, deal with the discovery question before this Court.  Moreover, if the complaint does not appear to establish a reasonable likelihood that the wrongs will be repeated, discovery is not justified to fill those deficiencies.

[5]  The Plaintiff's reliance on footnote 25 of *Clausen,* which indicates the possibility of an exception applicable "in appropriate circumstances to aid those alleging prolonged multi-act schemes," is tenuous at best.  The *Clausen* court noted that even this exception "does not constitute a license to base claims of fraud on speculation and conclusory allegations and that the complaint must set forth a factual basis for such belief."  *Clausen*, 290 F.3d at 1314 n.25 (citing *United States ex rel. Thompson v. Columbia/HCA Healthcare Corp*., 125 F.3d 899 (5th Cir. 1997) (internal quotations omitted).

This Court has requested additional case law more on point with the specific facts of the instant case. Although the Defendants have been unable to locate a factually similar case on point in the Eleventh Circuit or the Southern District of Florida[6], the Sixth Circuit has had the opportunity to provide more detailed guidance on this issue. *United States ex rel. Bledsoe v. Community Health Systems, Inc.*, 501 F.3d 493 (6th Cir. 2007) may be instructive as it analyzes the relaxation of Rule 9(b)'s strict requirements in those instances where the plaintiff has alleged a long-term, complex fraud. In *Bledsoe*, the relator in an action brought under the False Claims Act alleged that his employer was engaging in illegal and fraudulent medical billing practices. *Id.* at 497. After the complaint was dismissed for failure to meet the pleading requirements of Rule 9(b), the relator argued that the complaint had pled a "fraudulent scheme" and that the court should only require some examples of the fraudulent conduct. *Id.* at 509. The Sixth Circuit disagreed, stating that "placing allegations of fraud that are insufficient under Rule 9(b) in a complaint alongside allegations that properly state a claim does not affect the legal consequences afforded to the insufficient allegations." *Id.* The court continued by stating, "There is, quite simply, no legitimate reason for treating insufficient allegations of fraud that are placed in a complaint containing valid allegations differently from insufficient allegations of fraud that occupy their own complaint." *Id.*

---

[6]  *Medalie v. FSC Sec. Corp.*, 87 F. Supp. 2d 1295 (S.D. Fla. 2000), another case cited by the Plaintiff in its bench memorandum, recognized that Rule 9(b) is less stringently applied if the alleged fraud occurred over an extended period of time and the acts were numerous. The court stated that this relaxed requirement is applied where strict application of Rule 9(b) could result in substantial unfairness to *private* litigants who could not possibly have detailed knowledge of all the circumstances surrounding the alleged fraud. This is clearly not the case here, as the SEC had, and continues to have, detailed knowledge as to the circumstances of fraud that it alleges.

This is exactly the situation before this Court.  Here, the complaint makes certain allegations about the Named Companies, and then attempts to use those purported claims as a basis to imply that the Defendants have engaged in a long-term scheme to promote many other, unidentified companies.  This is a classic example of what Rule 9(b) attempts to prevent.

The *Bledsoe* court further noted, however, that "Where the allegations in a relator's complaint are complex and far-reaching, pleading every instance of fraud would be extremely ungainly, if not impossible." *Id*. at 509-10 (internal citations omitted).  The court stated that the reasons for not requiring every specific instance of fraud in such cases primarily advanced the goal of *logistical efficiency*.[7]  *Id*. at 509.  The court held therefore that where the relator pleads a complex and far-reaching fraudulent scheme with particularity and provides examples of specific false claims submitted to the government pursuant to that scheme, discovery may proceed on the entire fraudulent scheme.  *Id*. at 510.  It was then necessary for the court to determine how broadly or narrowly it should construe the concept of a "fraudulent scheme."  On the one hand, a more general construction would violate the principle that improperly pled allegations of fraud do not become adequate by merely being placed with allegations that are sufficient, while on the other hand, a more narrow construction would undermine the policy of allowing examples to be pled.  *Id*.  The *Bledsoe* court held that "the concept of  a  false or fraudulent  scheme should be

---

[7]  It is important to note that the allegations at issue in the *Bledsoe* complaint included allegations that the defendants fraudulently used incorrect provider numbers, fraudulently billed for glucometer finger sticks and heel sticks, submitted fraudulent cost reports, and upcoded and miscoded billing codes as part of a fraudulent Medicare and Medicaid billing scheme. *Id*. at 511. Unlike the examples of the Named Companies given by the Plaintiff in the instant case, these instances of fraud were component parts of *one* alleged fraudulent scheme.  An analogous "instance of fraud" in the case before this Court would be an individual promotion on a given date for one company.  For example, if the Defendants promoted PrimeGen on ten different occasions, then *Bledsoe's* "logistical efficiency" rule may relieve the Plaintiff from having to allege each of the ten promotions for PrimeGen.

construed as narrowly as is necessary to protect the policies promoted by Rule 9(b). Specifically, we hold that the examples that a relator provides will support more generalized allegations of fraud only to the extent that the relator's examples are *representative samples* of the broader class of claims." *Id*.  The court specified, "In order for a relator to proceed to discovery on a fraudulent scheme, the claims that are pled with specificity must be 'characteristic examples' that are 'illustrative of the class' of all claims covered by the fraudulent scheme." *Id*. at 510-11 (citations omitted).  The *Bledsoe* court fashioned the following rule to determine whether a pled claim is a representative sample of a broader class of claims:  "The examples of false claims pled with specificity should, *in all material respects, including general time frame, substantive content, and relation to the allegedly fraudulent scheme*, be such that a materially similar set of claims could have been produced with a reasonable probability by a *random draw from the total pool* of all claims." *Id*. at 511 (emphasis added).  This appears to be a critical rule for this Court's analysis in the instant case.

Here, it is obvious that the Plaintiff has not pled a complex and far-reaching fraudulent scheme with particularity.  Not only is the scheme described by the Plaintiff not complex, but it is also virtually impossible for a common scheme to consist of the independent promotions of various different companies—each one with different directors, officers, products, operations, financial conditions, news, market volatility for its shares, and trading volume.  At the very best, assuming that all of the allegations of the complaint are true, the Plaintiff is only able to plead four independent "schemes" that have nothing to do with one another or with any purported common scheme of which they are supposedly mere examples.

Applying *Bledsoe's* "representative sample" rule, the examples in the complaint do not, in any respect, represent any broader class of claims.  Those examples fail to show that in all

material respects, including general time frame, substantive content, and relation to the alleged common scheme, a materially similar set of claims could have been produced by a random draw from the total pool of all claims.

Even the Plaintiff's claims about the Named Companies belie the Plaintiff's theory that a common scheme existed:  Each of the Named Companies had separate and distinct investment opinions and press releases.  For PrimeGen, the promotion was about the company's success in drilling for oil, while the promotion of Caliber concerned development of wind-energy projects. *See* Complaint ¶22.  Fidelis was promoted for its development of solar-energy projects, while Supatcha's promotion dealt with mineral exploration.  *Id*. at ¶33.  If other examples of claims do exist, as the Plaintiff alleges, they too will not produce a materially similar set of claims because each of them will involve different companies in different industries with different products and news releases.

There is absolutely no suggestion that the Named Companies have any connection with each other, or even that they were involved in a broader common scheme to defraud investors. More importantly, there is no allegation that the Defendants had any input in or influence over the content of the news from each of the Named Companies.  Just the opposite, the complaint alleges that the Defendants parroted whatever the Named Companies announced in their press releases.  Complaint ¶49.

Because the Plaintiff is unable to allege with particularity a common scheme or that the Named Companies are representative samples of any common scheme, discovery as to the purported common scheme must not be permitted.  Nor should any discovery as to "any other company" be permitted, as such discovery would be tantamount to discovery related to a nonexistent common scheme.

Discovery Regarding Advice of Counsel Defense

As to the attorney-client privilege waiver based on the Defendants' advice of counsel defense, the effect of this rule is clear:  the defense of reliance on advice of counsel with respect to a *given subject* works a waiver of communications with counsel on the *same* given subject. Moreover, subject matter waiver is limited to situations in which a party intentionally puts protected information into the litigation in a selective, misleading, and unfair manner.  *See* Advisory Committee Notes, Fed. R. Evid. 502 Subsection (a).  In a ruling based on the interpretation of Rule 502(a), Magistrate Judge Seltzer of the Southern District of Florida found that the subject matter that was waived was limited to the subject matter contained in the intentional disclosure.  *See Chick-Fil-A v. ExxonMobil Corp.*, No. 08-61422-CIV-Cohn/Seltzer, 2009 U.S. Dist. LEXIS 109588, at \*18 (S.D. Fla. November 10, 2009) (finding that scope of subject matter waiver was too expansive where waiver would require production of all documents regarding remediation of property, valuation of property, and all communications with anyone, including actual and prospective purchasers, regarding the subject matter of the litigation).

While it is undisputed that the Defendants have asserted the defense of advice of counsel and therefore intentionally waived their attorney-client privilege *as to that subject matter*, there are many other possible areas of consultation with the lawyer concerning completely different subject matter, which are completely outside the scope of any subject matter waiver.  This Court should quash or modify the Emas Subpoena to the extent that it seeks privileged communications outside the subject matter of the advice of counsel defense, which was limited to legal advice regarding the Defendants' disclosures, statements and omissions, and contracts used, or intended to be used, for the promotions of the Named Companies.

## CONCLUSION

For these reasons, the Defendants respectfully request that this Court enter an Order (1) limiting the scope of discovery to those matters relevant or reasonably calculated to lead to the discovery of admissible evidence relating to the Defendant's promotion of the Named Companies, (2) limiting the scope of the waiver of the attorney-client privilege to legal advice regarding the Defendants' disclosures, statements and omissions, and contracts used, or intended to be used, for the promotions of the Named Companies, and (3) quashing or modifying the Emas Subpoena consistent with the Order limiting the scope of the attorney-client privilege waiver.

DATED:  June 2, 2011

Respectfully submitted,                                    and

Ward Kim Vaughan & Lerner LLP                Lynne Wiggins, Esq.
One Financial Plaza, Suite 2001                    Alabama Bar No. ASB 8808-I61A
Fort Lauderdale, Florida 33394                      2112 3rd Avenue South
(954) 527-1115  Telephone                           Birmingham, Alabama 35210
(954) 527-1116  Facsimile                             Phone: 205-718-3016
jkim@wardkim.com                                       Fax: 205-263-6420
                                                                    lynnewiggins@yahoo.com

By: ____/s/Jay Kim, P.A_____
        Jay Kim, P.A.
        Florida Bar No.: 137863

*Counsel for Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on June 2, 2011, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record or pro se parties identified on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic filing.

By:___/s/Jay Kim, P.A._____
Jay Kim, P.A.

## SERVICE LIST

Todd D. Brody, Esq.
Daniel R. Walfish, Esq.
Securities and Exchange Commission
New York Regional Office
3 World Financial Center, Suite 400
New York, NY 10281
Telephone:  212-336-0080
Facsimile:  212-336-1324

*VIA CM/ECF*

*Counsel for Plaintiff Securities and
Exchange Commission*