UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

Case No. 11-20413-CIV-GRAHAM/GOODMAN

SECURITIES AND EXCHANGE COMMISSION,

    Plaintiff,

vs.

WALL STREET CAPITAL FUNDING, LLC, *et al.*,

    Defendants.
_____

## SUBSTANTIVE ORDER ON INITIAL DISCOVERY DISPUTE

This cause is before me on the discovery disputes at issue in Defendants' Notice of Hearing. (DE# 19.) I held a hearing on the discovery dispute detailed in Defendants' notice on May 20, 2011. (DE# 20.) The hearing focused on Defendants' objections to a Request for Production propounded by the SEC and an SEC-issued *duces tecum* subpoena served on Defendants' former securities counsel, Joseph Emas, Esq.

Because the parties adopted diametrically opposed views on the scope of discovery, the Court asked them to submit post-hearing memoranda (*See* DE# 23; DE# 24), which the Court has now reviewed.

For the reasons outlined below, Defendants' objections to the SEC's Request for Production are **overruled** and their objections to the *duces tecum* subpoena served on their former counsel are **overruled in part and sustained in part.** In particular, the SEC's discovery is not limited in scope to the four companies listed in its Complaint. The SEC should, however, narrow the scope of the *duces tecum* subpoena served on Mr. Emas, though it is entitled to seek

from Mr. Emas documents relating to his securities advice to Defendants for all companies which received Defendants' promotional services, not merely the four listed in the Complaint.

I.      **General Background**

In its Complaint, the SEC alleges, in general, that defendants were engaged in what is informally called a "pump and dump" scheme.  The SEC claims that Defendants, who are stock promoters, committed myriad federal securities laws violations.

At bottom, the SEC alleges that Defendants distribute promotional materials which take the form of "investment opinions" and which typically express a positive opinion about the company being promoted, its revenues and the future direction of its stock.  But, according to the SEC, Defendants have no reasonable basis for these opinions and even publish the favorable opinions when they know of warning signs suggesting the existence of a scam concerning the penny stock company being promoted.  The SEC accuses Defendants of performing no independent research to support the enthusiastic comments in their investment opinions.

In their answer, Defendants assert the advice of counsel defense as their 18th affirmative defense.  At the hearing, defense counsel advised that Mr. Emas is the attorney upon whom Defendants relied.

Significantly (for purposes of the discovery dispute), the SEC alleges that Defendants engaged in this misconduct over the course of their long careers.  The SEC contends that Defendants have disseminated misinformation about hundreds of penny stocks and that their improper activities are part of a practice and pattern which uses the same or identical protocol.

Nevertheless, the SEC's complaint names only four penny stock companies.  The SEC contends that these four companies are merely *examples* or illustrations of the Defendants' standard practices.

The SEC seeks a permanent injunction against Defendants, as well as other relief, such as the disgorgement of ill-gotten gains (with pre-judgment interest) and civil monetary penalties.

In its request for production, the SEC seeks several categories of documents concerning Defendants' research, investigation or inquiry into **any** company for which Defendants rendered promotional services from January 1, 2008 to date.  In other categories in the request, the SEC seeks other documents concerning Defendants' activities with **all** companies for which they provided promotional services from January 1, 2008 to date.

The SEC also seeks, in its document request, "all documents concerning Joseph Emas, including, without limitation, all documents concerning all communications with Joseph Emas."

Likewise, in its subpoena to Mr. Emas, the SEC seeks "all documents concerning WSCF, SMA, Philip Cardwell, Roy Campbell or Aaron Hume."

## II.    The Discovery Dispute

Framed by this procedural background, the discovery disputes can be summarized as follows:

**First**, Defendants are willing to produce responsive documents concerning the four companies named in the Complaint but contend that a document request for materials concerning "all" companies for which Defendants issued investment opinions is overbroad and beyond the scope of permissible discovery.  Defendants also argue that Federal Rule of Civil Procedure 9(b)'s pleadings specificity requirement (i.e., that fraud allegations be asserted with "particularity") would be undermined if a party could demand discovery of all transactions even though the complaint alleged with particularity only activities concerning a far-smaller group of transactions and activities.

The SEC, on the other hand, contends that materials concerning all companies are discoverable because it alleged a pattern and practice and that the four companies mentioned are only illustrations of a broader and larger scheme. In addition, it says it would be unreasonable to require a plaintiff to allege with particularity all the alleged frauds in a complex, multi-year, ongoing scheme. According to the SEC, it is entitled to discovery about Defendants' involvement with other companies once it has sufficiently alleged specifics about the fraud allegations concerning the four companies it is using as examples in its Complaint.

This controversy – whether discovery should be limited to the four companies or expanded to all companies receiving promotional services from Defendants – is the deepest and most strident controversy between the parties on threshold discovery issues. There appears to be little chance of a compromise here, as the Parties adopt fundamentally different views on the basic approach – which then creates other, related disputes.[1]

**Second**, concerning the request for documents reflecting Defendants' communications with their lawyer, Defendants are willing to produce communications concerning the four companies mentioned in the Complaint but object to producing further communications, which they say are covered by the attorney-client privilege. The SEC contends that the documents are *all* relevant and discoverable (because it alleged a practice and pattern). It also contends that the documents are discoverable because the advice-of-counsel defense triggers a subject matter

---

[1] Metaphorically speaking, the Parties' positions here are akin to contemporary, litigation-based versions of the opposing views taken by the persons described in the famous 1967 song "Hello, Goodbye," by The Beatles. In that song, there were opposite perspectives and statements over almost everything: hello vs. goodbye, yes vs. no, stop vs. go, high vs. low, etc. Although songwriter Paul McCartney did not resolve the always-present differences of opinion in his song (which was released as a single but later included on the *Magical Mystery Tour* album released in the United States), this Court will stray from the song's storyline and decide the dispute. *See* www.elyrics.net/read/b/beatles-lyrics/hello,-goodbye-lyrics.html (last visited June 9, 2011) and http://en.wikipedia.org/wiki/Hello,_Goodbye (last visited June 9, 2011).

waiver and that the documents cannot remain covered by the attorney-client privilege when Defendants assert an advice-of-counsel defense.

**Third**, Defendants also object to the language of the document demand in the *duces tecum* subpoena to Mr. Emas. The one-sentence document demand purports to require Mr. Emas to produce "all documents" concerning the Defendants and one other entity. At the hearing, SEC counsel argued that this request was "broad, but not too broad." The SEC conceded at the hearing that it does not actually want "all" documents and suggested that the Defendants and Mr. Emas should understand that materials which did not concern promotional activities need not be produced.[2] In its post-hearing memorandum, the SEC, while opining that a narrowed request is unnecessary because of the likely *de minimis* amount of irrelevant documents encompassed by the broad language of the request, advised that it is willing to reformulate its requests in order to obviate any concerns over overbreadth.

### III. Legal Analysis

Federal Rule of Civil Procedure 26(b) governs the scope of discovery. That rule provides, in relevant part, that "[p]arties may obtain discovery regarding any non-privileged

---

[2] The Court used hypothetical illustrations at the hearing to address the overbreadth concern. For example, (hypothetical) invitations to attend a barbecue, sent from Defendants to Mr. Emas, would be covered by the subpoena, as would (for argument sake) photographs of Defendants and Mr. Emas at a social gathering. The SEC's counsel agreed that these materials are not being sought even though they are covered by the "broad" demand for "all" documents concerning the Defendants and Mr. Emas. The SEC, however, did not offer a suggestion as to how Defendants are supposed to know or intuit which materials are not actually being demanded in the "all" category.

In its post-hearing memorandum, the SEC attempts to justify its use of a request for communications which "may on their face appear relatively broad" by explaining that (1) it understands the volume of responsive documents to be "tiny," (2) the volume of "truly irrelevant" documents is "likely to be *de minimis*", and (3) Defendants' objection during the meet-and-confer process was not driven by a concern that the language of the request was overbroad in any way other than seeking documents concerning more than the four companies named in the Complaint. (DE 23, p. 10, n.5)

5

matter that is relevant to any party's claim or defense . . . Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence."  Subdivision (b) to the 1946 Advisory Committee Notes to Rule 26 indicates that "[t]he purpose of discovery is to allow a broad search for facts, the names of witnesses, or any other matters which may aid a party in the preparation or presentation of his case." (citations omitted).  Indeed, the Advisory Committee Notes approvingly quotes language from a case stating that "the Rules . . . permit 'fishing for evidence as they should.'" *Id.* (citation omitted).  *See also Hickman v. Taylor,* 329 U.S. 495, 507 (1947) ("No longer can the time-honored cry of 'fishing expedition' serve to preclude a party from inquiring into the facts underlying his opponent's case").

As summarized recently by United States Magistrate Judge Robin Rosenbaum in *AIG Centennial Ins. Co. v. O'Neill*, Case 09-60551, 2010 WL 4116555 (S.D. Fla. Oct. 18, 2010):

> The courts have long recognized the wide scope of discovery allowed under the Federal Rules of Civil Procedure. As the Eleventh Circuit's predecessor court noted, "The discovery provisions of the Federal Rules of Civil Procedure allow the parties to develop fully and crystalize concise factual issues for trial. Properly used, they prevent prejudicial surprises and conserve precious judicial energies." The United States Supreme Court has said that they are to be broadly and liberally construed. *Burns v. Thiokol Chem. Corp.*, 483 F.2d 300, 304 (5th Cir.1973) (citing *Hickman v. Taylor*, 329 U.S. 495, 507, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Schlagenhauf v. Holder*, 379 U.S. 104, 114–115, 85 S.Ct. 234, 13 L.Ed.2d 152 (1964)).

(internal quotation marks added to preserve the significance of original formatting).

Courts in this Circuit have often noted the basic rule that the scope of discovery is broad and that the discovery rules generally favor complete discovery.  United States Magistrate Judge Linnea Johnson outlined these overarching principles in *Donahay v. Palm Beach Tours & Transp., Inc.*, 242 F.R.D. 685, 687 (S.D. Fla. 2007):

> Rule 33 of the Federal Rules of Civil Procedure allow any party to serve on any other party written interrogatories concerning matters within the scope of Federal Rule Civil Procedure 26(b). The scope of discovery under Rule 26(b) is broad: "parties may obtain discovery regarding any matter, not privileged, which is relevant to the claims or defense of any party involved in the pending action." *Id.*; *Hickman v. Taylor*, 329 U.S. 495, 507-508, 67 S.Ct. 385, 91 L.Ed. 451 (1947). *See also Farnsworth v. Procter and Gamble Co.*, 758 F.2d 1545, 1547 (11th Cir.1985)(the Federal Rules of Civil Procedure "strongly favor full discovery whenever possible"); *Canal Authority v. Froehlke*, 81 F.R.D. 609, 611 (M.D.Fla.1979). Information is relevant if it is "germane, conceivably helpful to plaintiff, or reasonably calculated to lead to admissible evidence." *Parsons v. General Motors Corp.*, 85 F.R.D. 724 (N.D.Ga.1980). *See also Hickman*, 329 U.S. at 501, 67 S.Ct. 385. Thus, under Rule 26 relevancy is "construed broadly to encompass any matter that bears on, or that reasonably could lead to another matter that could bear on any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 352, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978). Discovery is not limited to the issues raised by the pleadings because "discovery itself is designed to help define and clarify the issues." Id. at 352, 98 S.Ct. 2380. In short, information can be relevant and therefore discoverable, even if not admissible at trial, so long as the information is reasonably calculated to lead to the discovery of admissible evidence. *Dunbar v. United States*, 502 F.2d 506 (5th Cir.1974).

Framed by these rules, it is no surprise that "[t]he party resisting discovery has a **heavy burden** of showing why discovery should be denied." *Principe v. Seacoast Banking Corp. of Fla.*, No. 09-14428-CIV, 2010 WL 2976766, at *2 (S.D. Fla. July 20, 2010) (emphasis supplied) (internal citations and quotation marks omitted). Phrased differently, Defendants here must demonstrate specifically how the objected-to requests from the SEC are unreasonable or unduly burdensome. *See generally Panola Land Buyers Ass'n v. Shuman*, 762 F.2d 1550, 1559 (11th Cir. 1985). *See also Dunkin' Donuts, Inc. v. Mary's Donuts, Inc.*, No. 01-0392-CIV-GOLD, 2001 WL 34079319, at *2 (S.D. Fla. 2001) (noting burden on party resisting discovery and explaining that "[d]iscovery should ordinarily be allowed under the concept of relevancy unless it is clear that the information sought has no bearing on the subject matter of the action").

7

Given this framework of, in general, broadly-authorized discovery, the Eleventh Circuit has noted that a district court's discretion in shaping discovery is "not entirely sacrosanct" and that an appellate court will reverse if the trial judge "fails to adhere to the liberal spirit of the Rules." *Williams v. City of Dothan,* 745 F.2d 1406, 1415 (11th Cir. 1984). *See also Milinazzo v. State Farm Ins. Co.*, 247 F.R.D. 691, 695 (S.D. Fla. 2007) ("Courts must employ a liberal discovery standard in keeping with the spirit and purpose of the discovery rules").

As noted, Defendants' primary objection is that the SEC's allegations do not contain any specific allegations concerning their activities with entities other than the four mentioned in the Complaint – a scenario which, according to Defendants, triggers Rule 9(b) concerns.

However, Rule 9(b)'s directive to plead fraud with particularity is a pleading rule, not a limitation on discovery and not the standard for the scope of discovery. *Fein v. Numex Corp.*, 92 F.R.D. 94, 97 (S.D.N.Y. 1981) (rejecting the position urged by Defendants here and noting that "the flaw in this argument is that Rule 9(b) tests only the sufficiency of the pleadings and not the perimeters [sic] of discovery"). In *Numex*, the court noted that Defendants had not moved under Rule 9(b) to dismiss the allegations for failure to meet the particularity requirement -- a scenario identical to the procedural posture here, where Defendants answered the SEC's complaint and did not file a motion challenging the purported lack of particularity for the alleged pattern of financial misconduct.

In effect, Defendants argue that a party in a fraud-related lawsuit may not obtain discovery on any matters not specifically alleged with the requisite particularity in the complaint. For the most part, Defendants do not cite *discovery* cases to support their crabbed view of discovery. Instead, they primarily cite *pleadings*-related cases concerning the sufficiency of fraud allegations in the motion to dismiss context. Thus, to use a well-publicized illustration

from current cases, Defendants' discovery theory would prevent any plaintiff pursuing claims against Bernard Madoff from obtaining discovery from Mr. Madoff on any of his activities other than those alleged with Rule 9(b) particularity. Given that Mr. Madoff received a 150-year sentence after entering a guilty plea to eleven (11) counts of fraud and fraud-related crimes and given that **thousands** of investors invested in his Ponzi scheme,[3] a plaintiff operating under the discovery philosophy advocated by Defendants here would need to file a lawsuit of several thousand pages and include myriad allegations meeting the particularity rule for pleading fraud if he wished to obtain discovery on the full scope of Mr. Madoff's *Ponzi* scheme activities.

This impractical result is illogical, of course, but it would be required by Defendants' argument. The Court is not inclined to adopt a theory which would lead to such far-fetched results, and other courts have declined to do so, as well. *E.g., Rorer Int'l Cosmetics, Ltd. v. Halpern*, 85 F.R.D. 43, 45 (E.D. Pa. 1979) (noting that the policies underlying Rule 9(b)'s particularity requirement are inapplicable once a plaintiff demonstrates some specific basis for his fraud charges, and permitting discovery of information relating to alleged kickbacks even though the complaint contained no allegations of kickbacks). "Once a plaintiff has shown that his charges are not frivolous or totally unsubstantiated, his suit, like any other suit, becomes subject to the Federal Rules of Civil Procedure." *Halpern*, 85 F.R.D. at 45.

In its Complaint, which seeks, *inter alia*, injunctive relief, the SEC makes many specific allegations about Defendants' involvement with four companies. Apparently, Defendants do not challenge the SEC's compliance with Rule 9(b)'s particularity requirement for these allegations, and such an argument would be unpersuasive if made.

---

[3] Http://online.wsj.com/article/SB124604151653862301.html (last visited June 9, 2011), http://s.wsj.net/public/resources/documents/st_madoff_victims_20091215.html (last visited June 9, 2011), http://www.justice.gov/usao/nys/madoff.html (last visited June 9, 2011).

For example, concerning Defendants' representations about PrimeGen Energy Corporation (OTC: PGNE), the SEC quotes investment opinions, provides the specific dates of the opinions, attaches examples of investment opinions as exhibits, quotes language from mass emails, attaches copies of the emails as exhibits, explains the Defendants' webpage material, attaches images of a web profile for PrimeGen on two specific dates in 2009, pinpoints the precise number of shares of PrimeGen stock which Defendant WCST obtained in exchange for its promotional activities and explains why the representations about PrimeGen were false (e.g., PrimeGen had no drilling operations or revenues and did not even have an office at the address where it claimed to be headquartered).

The SEC also alleges that the corporate Defendant existed for approximately ten years and is believed to have disseminated information relating to hundreds of penny stocks. The SEC alleges that Defendants "typically" engage in certain unlawful practices and its complaint pinpoints activities concerning four penny stock companies for illustrative purposes.

Based on this core allegation, discovery concerning other companies is within the broad scope of Rule 26. *Eastman Kodak Co. v. Camarata*, 238 F.R.D. 372 (W.D. N.Y. 2006) (permitting discovery of documents dating back 14 years, including discovery concerning additional money laundering violations involving transactions in additional, personal bank accounts at other banks). *See also United States v. Bledsoe*, 501 F.3d. 493, 509-511 (6th Cir. 2008) (holding that "where a [party] pleads a complex and far-reaching fraudulent scheme with particularity, and provides **examples** of specific false claims . . . a [party] may proceed to **discovery on the entire fraudulent scheme**") (emphasis added).[4] The SEC's allegations about

---

4 The *Bledsoe* Court also held that a party pursuing fraud claims will be permitted to proceed to discovery on the entire fraudulent scheme when the claims which are pled with specificity are "characteristic examples" "illustrative of the class" of claims covered by the fraudulent scheme. *Id.* at 511. In the instant case, the SEC alleged that "Defendants always do

the Defendants' alleged fraud in connection with the four companies meets Rule 9(b)'s particularity requirement and it would be illogical and impractical to require the SEC to meet the particularity requirement for each and every other company which Defendants promoted in order to obtain discovery about their similar activities in a practice and pattern of purported misconduct.

In addition to the well-established rule of broad discovery, there is another reason to permit the SEC to obtain discovery about the Defendants' activities with other penny stock companies beyond the four mentioned in the complaint: the SEC is seeking injunctive relief, and as a result may have a need to demonstrate future violations of the securities laws with evidence of a recurring and ongoing **pattern** of violations. *See SEC v. Carriba Air*, *Inc.,* 681 F.2d 1318, 1322 (11th Cir. 1982).

The Court therefore **overrules** Defendants' objections and their contention that the SEC's discovery is limited to information concerning their activities with only the four companies mentioned for illustrative purposes in the SEC's complaint.

Concerning the *duces tecum* subpoena to Mr. Emas, Defendants have asserted the advice of counsel defense as an affirmative defense, which therefore leads to a waiver of the attorney-client privilege. Defendants concede that waiver is a natural consequence of their defense but they believe that the waiver should be limited to the subject matter -- which they have defined narrowly as "legal advice regarding the defendants' disclosures, statements and omissions, and contracts used, or intended to be used, for the promotions *of the Named Companies*." (emphasis added) (DE# 24, p. 9).

---

the same thing" and that they "commonly" take "typical" steps (e.g., expressing "a positive opinion about the company being promoted" even though they have "no reasonable basis for those opinions").

Defendants' requested limitation on the application of the advice of counsel defense is not reflected in the actual affirmative defense, however. Specifically, Defendants' 18th Affirmative Defense broadly says: "Defendants have relied in good faith on the advice of counsel in making their disclosures and statements or omissions." (DE# 5, p. 16). The affirmative defense does not state or even suggest that it applies only to Defendants' former attorney's advice on the four companies mentioned as examples of a pattern of conduct in the complaint. Defendants did not move to dismiss the complaint or carve out allegations concerning all entities other than the four discussed in the complaint. Instead, the affirmative defense applies to disclosure**s** (plural), statement**s** (plural) and omission**s** (plural). Because the defense is not restricted to activities concerning only four companies, it must logically be construed to apply to activities relating to all companies for which Defendants provided promotional services (and which are alleged generally in the Complaint, as part of a typical pattern of identical or nearly identical activity).

Defendants cannot assert the advice of counsel advice while simultaneously and strategically selecting which communications to disclose for self-serving purposes and which communications to retain as confidential. *United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991); *Immuno Vital, Inc. v. Telemundo Group, Inc.,* 203 F.R.D. 561, 564 (S.D. Fla. 2001) (explaining that the advice of counsel defense leads to waiver for advice by both in-house and outside counsel because the party raising the defense "must permit discovery of any and all legal advice rendered on the disputed issue").

Defendants cannot prejudice the SEC by using the attorney-client privilege as a sword and a shield, and their effort to narrow the subject matter of the waiver to only communications concerning four companies is unreasonable and unfair to the SEC. In fact, a similar strategy was

rejected in *United States v. Locasio*, 357 F. Supp. 2d 536, 548-53 (E.D.N.Y. 2004).  In *Locasio*, the court required the disclosure of not only communications concerning the advertisements at issue in the case but also as to communications with a **different** attorney regarding the compliance of a **previous** set of advertisements to which a Federal Trade Commission standard applied.  *Id.*

Therefore, the Court **overrules** Defendants' objections to the scope of the waiver generated by their assertion of the advice of counsel defense.  Defendants and Mr. Emas may not withhold responsive documents on the grounds of the attorney-client privilege.  The waiver does not mean that *all* communications between Defendants and their former counsel, Mr. Emas, are discoverable.  Rather, it means that all communications concerning his advice about disclosures, statements and omissions concerning the promotional activities Defendants provided for *any* penny stock company during the designated time period are no longer privileged.  Communications between Defendants and Mr. Emas about other unrelated subjects remain privileged, however.

Nevertheless, notwithstanding their unsuccessful argument on the scope of discovery and the subject matter of the attorney-client privilege waiver, Defendants have asserted a different and legitimate objection to the SEC's subpoena to Mr. Emas:  it is overly broad, and the Court therefore **sustains** Defendants' overbreadth objection.  As phrased, the document component of the *duces tecum* subpoena concerns <u>all</u> communications, regardless of subject matter, and would, for example, encompass emails about a barbecue, wedding invitations, exchanges of articles concerning professional sports teams, memoranda about the parties' favorite movies, etc.

Under these circumstances, the Court believes it is logical to accept the SEC's offer to "reformulate" the document list in the subpoena so that it pinpoints only those documents to

13

which the SEC is entitled. The SEC shall cooperate with defense counsel in limiting the scope of materials encompassed by the subpoena. Counsel are directed to agree upon a narrowed subpoena within seven (7) days of entry of this Order. If the Parties are unable to agree, then they may contact chambers and schedule a hearing on my discovery calendar. The Parties need *not* submit the modified, narrowed list to the Court if there is an agreement on the revised scope.

Although the Parties and the Court (and its staff) have expended a significant amount of time and energy on this discovery dispute, the Court is not awarding fees and costs to the SEC, as the Defendants were substantially justified in asserting their objections.

**DONE AND ORDERED**, in Chambers, in Miami, Florida, this 10th day of June, 2011.

Jonathan Goodman
UNITED STATES MAGISTRATE JUDGE

**Copies furnished to:**
The Honorable Donald Graham
All counsel of record